1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

THE RAISIN BARGAINING
ASSOCIATION, et al.,

                    Plaintiff,

    v.

HARTFORD CASUALTY INSURANCE
CO., et al.,

                    Defendants.

1:10-cv-00370-OWW-DLB

MEMORANDUM DECISION ON
DEFENDANT'S MOTION TO DISMISS
(Docs. 7,8)

## I.   **INTRODUCTION**.

On January 27, 2010, the Raisin Bargaining Association ("RBA"), Glen S. Goto, and Monte Schutz ("Plaintiffs") filed a complaint in the Superior Court of California, County of Fresno, against Hartford Casualty Insurance Company ("Defendant") alleging various state causes of action.  (Doc. 1, Ex. B).  Defendant removed Plaintiffs' action pursuant to 28 U.S.C. § 1441(b) on the basis of diversity jurisdiction. (Doc. 1).

Defendant filed a motion to dismiss Plaintiffs' complaint on March 5, 2010.  (Docs. 7, 8).[1]  Plaintiffs filed opposition to

---

[1] Docket number 7 is Defendant's motion to dismiss, and docket number 8 is the memorandum in support thereof.  Citations in this order to the "Motion to Dismiss" refer to Defendant's memorandum.

1

1  Defendant's motion to dismiss on April 30, 2010.  (Doc. 10).

2  ## II. **FACTUAL BACKGROUND.**

3  Plaintiff  RBA  is  a  nonprofit  California  cooperative
4  association. (Complaint at 1).   Plaintiffs Glen Goto and Monte
5  Schutz are and were, at all times relevant to this action, members
6  of the Board of Directors of RBA.  (Complaint at 2).

7  Plaintiffs entered into contracts for insurance with Defendant
8  whereby Defendant agreed  to  insure  Plaintiffs  against  various
9  claims brought  against  Plaintiffs  for  actions  taken  in  RBA's
10  business capacity.  (Complaint at 1, 3).   The insurance policies
11  relevant to this action encompass coverage periods from at least
12  2005 to the present and obligate Defendant to provide defense and
13  indemnity for covered claims made against RBA.  (Complaint at 1-3).

14  Beginning  in  or  about  January  2007,  Richard  Garabedian
15  ("Garabedian"), through counsel, sent several letters threatening
16  litigation and demanding almost $900,000.00 to settle a dispute
17  between  RBA,  Goto,  and  Schutz  concerning  the  RBA  Board  of
18  Director's decision not to recommend Garabedian to the Secretary of
19  the U.S. Department of Agriculture ("USDA") for appointment to the
20  RBA's reserved seats on the Raisin Administrative Committee of the
21  USDA.  (Complaint at 3).   On or about March 2, 2007, Garabedian
22  filed a complaint against Plaintiffs alleging defamation, slander,
23  and  breach  of  the  common  law  Fair  Procedure  Doctrine  in  Fresno
24  County Superior Court.  (Complaint at 3).

25  In response to the Garabedian complaint, on or about April 4,
26  2007, Plaintiff's filed an Anti-SLAPP motion against Garabedian.
27  (Complaint at 4).  On November 8, 2007, the Superior Court granted
28  Plaintiffs'  Anti-SLAPP  motion  and  struck  Garabedian's  entire

**2**

complaint.  (Complaint at 5).

The complaint alleges that upon receipt of Garabedian's complaint in March 2007, Plaintiffs immediately tendered the complaint to Defendant. (Complaint at 5).  On or about March 19, 2007, Plaintiffs received a letter from Defendant agreeing, without any reservations, to defend and provide indemnity to Plaintiffs. (Complaint at 5).  Plaintiffs met with Defendant's counsel, attorneys Gordon Park and Mohammed Mandegary, who "suggested/recommended" to Defendant that Plaintiff's counsel, the law firm of Campagne, Campagne, & Lerner, remain working on defending against the Garabedian complaint until resolution of an Anti-SLAPP motion. (Complaint at 5).  The complaint alleges that Park and Mandegary promised they would recommend to Defendant that it should reimburse Plaintiffs for the fees incurred in defending the Garabedian complaint. (Complaint at 5).  Plaintiffs allege that they "performed all of the Anti-SLAPP work and expected to be reimbursed" by Defendant. (Complaint at 5). Defendant paid Plaintiffs' invoices from March 2007 through September 2007 after taking additional write downs at the expense of Plaintiffs. (Complaint at 5).  Defendant reimbursed Plaintiffs $38,891.42. (Complaint at 5).

On or about November 12, 2009, Defendant sent Plaintiffs a document entitled "Case Summary." (Complaint at 6).  The Case Summary refused full payment of legal fees incurred by Plaintiffs. (Complaint at 6).  Plaintiffs allege that the Case Summary set forth an incorrect account of the defense provided in connection with the Garabedian complaint. (Complaint at 6). The Case Summary asserts that Defendant paid a total of $69,366.48 in legal fees.

**3**

1  (Complaint at 6).  The Case Summary also indicated that Defendant
2  intended to collect the attorneys' fees awarded by the Superior
3  Court in connection with Plaintiffs successful Anti-SLAPP motion.
4  (Complaint at 6).   Plaintiffs sent Defendant a written response to
5  Defendant's Case Summary on December 16, 2009.  (Complaint at 7).
6  Upon receipt of Plaintiff's response, Defendant asked Plaintiff to
7  forward a copy of the Case Summary.  (Complaint at 8).

8       The total amount of fees and costs for work performed by
9  Plaintiffs' counsel from January 2007 through September 2007 was
10 $77,056.81. (Complaint at 5).  According to the FAC, none of the
11 work performed by Plaintiffs' counsel was duplicative of the work
12 performed by Defendant's counsel. (Complaint at 6). Plaintiffs
13 allege that Defendant's actions were taken in bad faith, and that
14 Defendant had actual knowledge that its conduct constituted bad
15 faith. (Complaint at 7).

16      Plaintiffs allege they have incurred costs and attorney's fees
17 as a result of Defendant's actions. (Complaint at 7).  Plaintiffs
18 also contend they have suffered great emotional distress as a
19 result fo Defendant's conduct.  (Complaint at 7).  Plaintiffs
20 contend that Defendant owes Plaintiffs $38,165.33, plus 10% APR as
21 well as punitive damages and attorneys' fees incurred in the
22 prosecution of the instant law suit.  (Complaint at 5).

23                   **III. <u>LEGAL STANDARD</u>.**

24      Dismissal under Rule 12(b)(6) is appropriate where the
25 complaint lacks sufficient facts to support a cognizable legal
26 theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th
27 Cir.1990). To sufficiently state a claim to relief and survive a
28 12(b)(6) motion, the pleading "does not need detailed factual

**4**

allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908.

## IV. Discussion

### A. Plaintiffs' Breach of Contract Claim

A claim for breach of contract under California law requires: 1) the existence of the contract; 2) plaintiff's performance or excuse for nonperformance of the contract; 3) defendant's breach of the contract; and 4) resulting damages. *E.g. Armstrong Petrol. Corp. V. Tri Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n. 6 (Cal. Ct. App. 2004). In order to determine whether a plaintiff has stated a claim for breach of contract, a court must compare the allegations of the complaint with the terms of the contract. *See, e.g., Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 5 (Cal. 1995).

Interpretation of an insurance policy is a question of law. *Id*. As the California Supreme Court stated in *Waller*,

> The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties."Under statutory rules of contract interpretation, the mutual intention of the parties at

the time the contract is formed governs interpretation. Such intent is to be inferred, if possible, solely from the written provisions of the contract. The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage', controls judicial interpretation. " A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable.   But language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. Courts will not  strain to create an ambiguity where none exists.

11 Cal. 4th at 18-19 (citations omitted).

The provisions of the insurance contract central to this dispute are contained in the "Business Liability Coverage Form" found at pages 59 through 70 of Exhibit A to the complaint.[2] Section A(1)(a) of the Business Liability Coverage Form provides, in pertinent part:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages....No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension-Supplementary Payments.

(Complaint, Ex. A at 59).  Section E(2)(d), entitled "Obligations at the Insured's Own Cost" provides:

No Insured will, except at that insured's own cost, voluntarily make any payment, assume any obligation, or incur any expense, other that for first aid, without our consent.

(Complaint, Ex. A at 66).

///

[2] The original page numbers for Exhibit A are illegible.  Page citations to Exhibit A contained within this order correspond to the pagination of the PDF document contained on the CM/ECF docket.

7

Section A(1)(a) confers on Defendant the right to control defense of a claim, and section E(2)(d) establishes that, unless Defendant consents to an expenditure, Defendant is not liable for voluntary payments made by Plaintiffs in defense of a covered claim. *See, e.g.*, *Jamestown Builders v. General Star Indem. Co.*, 77 Cal. App. 4th 341, 346 (Cal. Ct. App. 1999) (discussing no-voluntary-payment provisions). Unless the complaint alleges facts sufficient to support a reasonable inference that Defendant consented to Plaintiffs' payments to its private counsel, Plaintiffs cannot state a claim for breach of contract. *See id.*

Defendant contends that Plaintiffs' breach of contract claim is barred as a matter of law, citing *Truck Ins. Exch. v. Unigard Ins. Co.*, 79 Cal. App. 4th 966, 976-77, 980 (2000) and *Faust v. The Travelers*, 55 F.3d 471, 472 (9th Cir. 1995) for the proposition that "where...a policy contains a clear provision prohibiting voluntary payments, a carrier is not liable for voluntarily incurred defense costs." (Motion to Dismiss at 8).[3] Both *Unigard* and *Faust* recite the well settled rule that no-voluntary-payments provisions are enforceable under California law. *Unigard, 79 Cal. App. 4th 977; Faust, 55 F.3d at 472; accord Jamestown Builders*, 77 Cal. App. 4th at 346; *Belz v. Clarendon America Ins. Co.*, 158 Cal. App. 4th 615, 627 (Cal. Ct. App. 2007); *Low v. Golden Eagle Ins.*

---

[3] Defendant asserts three arguments in support of its motion to dismiss Plaintiffs' breach of contract claim: (1) Defendant is not liable for fees incurred pre-law suit; (2) Defendant is not liable for fees incurred pre-tender; and (3) Defendant is not liable for voluntary payments made by Plaintiff without Defendant's consent. (Motion to Dismiss at 5-8). Defendant's first and second contentions are not grounds for dismissal of Plaintiff's contract action. Assuming Defendant's first and second arguments are correct, the complaint may still state a claim for breach of contract with respect to costs incurred after Plaintiffs tendered defense of the Garabedian complaint to Defendant.

**8**

*Co.*, 110 Cal. App. 4th 1532, 1544 (Cal. Ct. App. 2003). However, enforcement of a no-voluntary-payments clause is premised on an insurer's lack of consent to a given expenditure. *See Belz*, 158 Cal. App. 4th at 628.

The complaint contains the following allegations concerning issue of Defendant's consent:

> 20. Plaintiffs...met with [Defendant's] Counsel, who suggested/recommended to Defendant that Plaintiffs' counsel...remain working on defending against the Garabedian Complaint until the conclusion of the Anti-SLAPP motion.

> 21. Acknowledging the Plaintiffs' Counsel's experience with Anti-SLAPP motions, [Defendant's counsel] then promised they would recommend to Defendant that it should reimburse the Plaintiffs for their fees for defending against Garabedian's Complaint.

(Complaint at 5). The complaint also alleges that Defendant reimbursed Plaintiffs $38,891.42. (Complaint at 5).

Plaintiffs' allegations that (1) Defendant's counsel stated they would "recommend/suggest" to Defendant that Plaintiffs' counsel continue working on the Anti-SLAPP motion; (2) Defendant's counsel "promised they would recommend" to Defendant that Plaintiffs be reimbursed; and (3) Defendant partially reimbursed Plaintiffs for fees paid to Plaintiffs' private counsel, taken together, are sufficient to support a reasonable inference that Defendant consented to and paid at least some of Plaintiffs' payments to Plaintiffs' private counsel based on alleged representations of Defendant's disclosed agent/attorney that Plaintiffs' attorneys work on the Anti-SLAPP motion for which Defendant's attorney would recommend payments. To the extent Defendant consented to Plaintiffs' expenditures, Defendant's failure to reimburse Plaintiffs for such expenditures may

constitute a breach of Defendant's contractual duty to defend. However, the complaint is ambiguous as to the extent and nature of Defendant's obligation. Plaintiffs' allegation that Defendant's attorneys stated they would "recommend" that Plaintiff's private counsel be reimbursed is insufficient to bind Defendant. Plaintiffs' breach of contract claim must be DIMMISSED, without prejudice.

**B.   Tortious Breach of Implied Covenant of Good Faith and Fair Dealing**[4]

California law provides that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *E.g. Jonathan Neil & Assoc., Inc. v. Jones*, 33 Cal. 4th 917, 937 (Cal. 2004). The precise nature and extent of the duty imposed by the implied covenant of good faith depends on the purpose underlying a contract. *Id.* The implied covenant of good faith and fair dealing cannot impose substantive duties beyond those incorporated in the specific terms of a contract. *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 349 (Cal. 2000). Although breach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing, *Schwartz v. State Farm Fire & Casualty Co.*, 88 Cal. App. 4th 1329, 1339 (Cal. Ct. App. 2001), there can be no

---

[4] Plaintiff asserts two claims for breach of the implied covenant; an ordinary breach and a "tortious" breach. California law does not recognizes Plaintiffs' distinction; either the refusal to defend is an ordinary breach compensable pursuant to contract remedies, or the refusal is an unreasonable action compensable pursuant to tort remedies. *See Amato*, 53 Cal. App. 4th at 831; *but see Jones,* 33 Cal. 4th at 940-41 (insurer's breach of the covenant of good faith and fair dealing did not "sound in tort" where tort remedies were unnecessary to protect insured's interests). Plaintiffs' claim for ordinary breach of the implied covenant is subsumed within Plaintiffs' breach of contract claim and the stand-alone claim is therefore DISMISSED with prejudice.

breach of the implied covenant with respect to benefits that are not due under an insurance policy, *Brehm v. 21st Century Ins. Co.*, 166 Cal. App. 4th 1225, 1235 (Cal. Ct. App. 2008) (citing *Waller*, 11 Cal.4th at 36).

Under California law, an insurer's unreasonable refusal to defend an insured is considered a breach of the implied covenant of good faith and fair dealing and is actionable as a tort. *See, e.g.*, *Amato*, 53 Cal. App. 4th at 831. Once an insured has established an unreasonable breach of the implied covenant of good faith and fair dealing, the tort remedies available vary depending on the egregiousness of the insurer's conduct. *See Tibbs*, 755 F.2d at 1375 (distinguishing remedies available in the context of ordinary bad faith action from remedies available where insured establishes malice or oppression).[5] In order to plead a claim for tortious breach of the implied covenant of good faith and fair dealing, a complaint must allege facts which demonstrate a failure or refusal to discharge contractual responsibilities "prompted not by an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party." *Careau & Co. v. Security Pacific Business Credit*, *Inc.*, 222 Cal. App. 3d 1371, 1395 (Cal. Ct. App. 1990). Refusal to defend, without more, does not constitute a breach of the implied covenant. *E.g. Tibbs v. Great American Ins. Co.*, 755 F.2d 1370,

---

[5] Plaintiffs' claim for tortious breach includes allegations that Defendant acted with either malice, fraud, or oppression. (Complaint at 12-13). Because the complaint is insufficient to allege bad faith, *a fortiori*, the complaint does not state sufficient facts to allege malice, fraud, or oppression.

1375 (9th Cir. 1985)(citation omitted); *accord Campbell v. Superior Court*, 44 Cal. App. 4th 1308,1319-1320 (Cal. Ct. App. 1996) (only unreasonable breach of duty to defend constitutes a tort); *Amato v. Mercury Cas. Co.*, 53 Cal. App. 4th 825, 831 (1997) (same).

Plaintiffs contend that "implicit in [Defendant's] obligations to act fairly and in good faith toward Plaintiffs was their [sic] duty to promptly and adequately reimburse Plaintiff as agreed." (Complaint at 10). Defendant contends that the following facts evince Defendant's bad faith:

> 24. Subsequent to [Defendant's] payment of the $38,891.42 to Plaintiffs...[Defendant] sent a "Case Summary" to the Plaintiffs refusing full payment evincing [Defendant's] bad faith tactics...This "Case Summary" sets forth an incorrect account of the 'Defense' provided....First, Defendant Hartford incorrectly states that the Plaintiff's law firm continued working on the case at the request of the RBA with the understanding it would not be paid by [Defendant]. (Complaint at 6).

> 25. In addition, [Defendant] improperly asserts in the "Case Summary" that it has paid a total of $69,366.48 in legal fees to the Plaintiffs. Yet, the RBA has received only $38,891.42...(Complaint at 6).

> 26. Further, despite the fact that [Defendant] acknowledges in its "Case Summary" that it will be filing a claim...to collect the attorneys' fees that were awarded by the court following...the successful Anti-SLAPP motion, it still fails/refuses in bad faith to pay the remainder owed to Plaintiffs. (Complaint at 6).

> 28. [Defendant] was put on notice of its bad faith tactics on July 30, 2007, when Plaintiffs' counsel sent Ms. Menezes a letter setting forth [Defendant's] duties and obligations...The letter cited case authority for this proposition.[6] (Complaint at 7).

> 32. [Defendant]...[requested] that Plaintiffs send [Defendant] a copy of its very own letter, which should have been in its file...This is further evidence of [Defendant's] bad faith and delay tactics...(Complaint at 8).

---

[6] All three of the case citations contained in Plaintiffs' counsel's July 20 letter were incorrect.

1    The statement Plaintiffs complain of in paragraph 24 of the

2 complaint does not evince bad faith.   The Case Summary simply

3 demonstrates  a  difference  of  opinion  between  Defendant  and

4 Plaintiffs with respect to the amount due pursuant to the purported

5 arraignment between Defendant's counsel and Plaintiffs' private

6 counsel.   Given the equivocal allegations underlying the alleged

7 arrangement, the opinion expressed in the Case Summary is not so

8 unreasonable as to demonstrate bad faith.[7]

9    The Case Summary's accounting of funds paid in defense of the

10 Garabedian complaint is also insufficient to demonstrate bad faith.

11 *Jones*, 33 Cal.4 th at 938 ("billing dispute does not, by itself,

12 deny the insured the benefits of the insurance policy") (citation

13 omitted).   The  disparity  between  the  amount  of  reimbursement

14 Plaintiffs received and the total amount of defense costs state in

15 the Case Summary is attributable to the fact that, in addition to

16 reimbursing Plaintiffs, Defendant also retained and paid its own

17 counsel.   (Complaint at 5).   Nor is the fact that Defendant

18 intended  to  recover  attorneys'  fees  from  Garabedian's  estate

19 indicative  of  bad  faith.   It  is  undisputed  that  Defendant  paid

20 attorneys'  fees  in  connection  with  the  Anti-SLAPP  motion.

21 (Complaint  at  5)  (discussing  reimbursement  amounts  paid  by

22 Defendant).   Finally,  neither  Defendant's  disagreement  with

23 Plaintiffs'  July 30 letter nor Defendant's request for a copy of

24

25 [7] Plaintiffs allege  merely  that  (1)  Defendant's  counsel  stated  they  would
"recommend/suggest" to Defendant that Plaintiffs' counsel continue working on the
26 Anti-SLAPP motion; and (2) Defendant's counsel "promised they would recommend"
to Defendant that Plaintiffs be reimbursed.   (Complaint at 5).   Plaintiffs'
27 allegations give no indication of  whether  Defendant's  counsel's  statement
regarding reimbursement applied to future work, work already completed, or both.
28 Nor does the statement suggest Defendant would accept the recommendation or that
it had committed to pay for work on the Anti-SLAPP motion.

the Case Summary from Plaintiffs is sufficient to transform what appears to be, at most, and ordinary breach of a contract term, into a breach of the duty of good faith and fair dealing. *E.g.* *Careau*, 222 Cal. App. 3d at 1395 (claim for breach of the implied covenant requires more than allegations of bad judgement or negligence). Plaintiffs' claim for tortious breach of the implied covenant of good faith and fair dealing is DISMISSED, without prejudice. Plaintiffs will be given an opportunity to re-plead a single claim for breach of the implied covenant of good faith and fair dealing.

**D. Plaintiffs' Waiver/Estoppel Claim**

Waiver and estoppel are distinct concepts. Waiver exists when an insurer intentionally relinquishes a known right. *E.g. State Farm Fire & Casualty Co. v. Jioras*, 24 Cal. App. 4th 1619, 1628 n.7 (Cal. Ct. App. 1994). Estoppel is applicable where one party detrimentally relies on the conduct or statements of another. *E.g. Waller*, 11 Cal. 4th at 33.

Defendant cites *Manneck v. Lawyers Title Ins. Corp.*, 28 Cal. App. 4th 1294, 1303 (Cal. Ct. App. 1994) for the proposition that "coverage under the insurance policy cannot be created by waiver or estoppel." (Motion to Dismiss at 10). In *Manneck*, the California Court of Appeal explained that:

> The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy *risks not covered by its terms*, or risks expressly excluded therefrom and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of forfeiture.

28 Cal. App. 4th at 1303 (citation omitted)(emphasis added).

**14**

1  Accordingly, Plaintiffs' waiver/estoppel claim is DISMISSED, with
2  prejudice.[8]

3  **E.  Plaintiff's Quasi-Contract Claim**

4      California courts turn to the legal fiction of "quasi-
5  contract" to prevent unjust enrichment. *Earhart v. William Low*
6  *Co.*, 25 Cal.3d 503, 515 n.10 (Cal. 1979). The precise nature of
7  Plaintiffs' quasi-contract claim is unclear, as Plaintiffs' fail to
8  allege facts sufficient to establish that Defendant ever consented
9  to have Plaintiffs' private counsel conduct work on Defendant's
10 behalf. To the extent Plaintiffs' quasi-contract claim is based on
11 the insurance agreement, "it is well settled that an action based
12 on an implied-in-fact or quasi-contract cannot lie where there
13 exists between the parties a valid express contract covering the
14 same subject matter." *E.g. Lance Camper Manufacturing Corp. v.*
15 *Republic Indemnity Co.*, 44 Cal. App. 4th 194, 203 (Cal. Ct. App.
16 1996); *accord Eisenberg v. Alameda Newspapers, Inc.,* 74 Cal. App.
17 4th 1359, 1387 (Cal. Ct. App. 1999) (citing *Shapiro v. Wells Fargo*
18 *Realty Advisors* 152 Cal. App. 3d 467, 482 (1984)); *Wal-Noon Corp.*
19 *v. Hill,* 45 Cal. App. 3d 605, 613 (1975)). Plaintiffs' quasi-
20 contract action is DISMISSED without prejudice.

21 **F.  Plaintiffs' Quantum Meruit Claim**

22      Quantum meruit is a quasi-contractual claim which rests upon
23 the equitable theory that a contract to pay for services rendered
24 is implied by law for reasons of justice. *E.g. Hedging Concepts,*
25 *Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419

26

27 _____

28 [8] At oral argument, Plaintiffs' counsel conceded that dismissal with prejudice
   is appropriate for this claim.

1  (Cal. Ct. App. 1996).[9] The complaint does not allege facts
2  sufficient to establish that Defendant consented to the services
3  provided by Plaintiffs' private counsel.  Further, the extent to
4  which Defendant received services for which it did not pay is
5  unclear, as its is undisputed that Defendant reimbursed
6  Plaintiffs a substantial amount.  Plaintiffs' quantum meriut
7  claim is DISMISSED without prejudice.

8  **G.  Breach of Oral Contract Claim**

9      Plaintiffs' claim for breach of oral contract fails to state
10  facts sufficient to support a plausible inference that any oral
11  contract was entered into by Plaintiffs and Defendant.
12  Plaintiffs' allegations are inherently implausible, as the
13  complaint states that "prior to the occurrence of the actions
14  giving rise to [the Garabedian complaint]...Defendant agreed to
15  accept defense of the [Garabedian complaint]."  (Complaint at
16  16).  Plaintiff's oral contract claim is DISMISSED without
17  prejudice.

18  **H.  Negligence Claim**

19      A claim for negligence requires a plaintiff to plead duty,
20  breach, causation, and damages. *See, e.g., Ortega v. Kmart Corp.,*
21  26 Cal.4th 1200, 1205 (Cal. 2001). Plaintiffs advance the
22  following allegations in support of their negligence claim:

23      73. At all times relevant, the conduct of Defendant was
        negligent and constituted breach of their duties,
24      including, but not limited to, statutory duties, common
        law duties, and other duties mandated by law.
25      Defendant, and their agents, represented that they were
        experts and held themselves out as having superior
26

27  [9] Plaintiffs rely on the same authorities in opposition to the motions to dismiss
28  the quasi-contract, oral contract, and quantum meruit claims.  Plaintiffs'
    authorities discuss the general rule that oral contracts may be enforceable.

1
2
3
4

training education, and knowledge in the insurance
industry.  In view of the relationship between the
parties and the representations of Defendant and their
agents, Plaintiff relied totally on Defendant to
timely, fairly, and adequately reimburse Plaintiffs
under the terms of the contracts of insurance.
(Complaint at 17).

5
6
7

74.  Defendant failed to reimburse Plaintiffs as
agreed.  Because of [Defendant's] failure to comply
with the agreement, and Plaintiffs' reliance thereon,
Plaintiffs were forced to pay counsel to defend them in
the underlying suit without the promised reimbursement.
(Complaint at 17).

8
9
10

75. [Defendant] had, and has, a duty to Plaintiffs, and
all other respective insureds, to act at all times with
due and reasonable care...Defendant failed to do so.
(Complaint at 17).

11
12

76. [Defendant] breached its duty by failing to act in
a manner consistent with the standard of care required
by...law...(Complaint at 17).

13
14

77. As a direct and proximate result of Defendant's
negligence, Plaintiffs have suffered
damages...(Complaint at 17).

15
16
17
18
19
20
21
22
23
24
25
26
27

Plaintiffs' allegations are insufficient to establish a duty

independent of the insurance contract.  Further, Plaintiffs'

conclusory allegation regarding Defendant's status as an

insurance "expert" is not related to the breach of duty

Plaintiffs allege.  Rather, the breach of duty alleged by

Plaintiffs is failure to comply with a duty imposed by a contract

term.  Negligence based on a insurer's breach of a contract term

is not a cognizable cause of action under California law.

*Sanchez v. Lindsey Morden Claims Services, Inc.*, 72 Cal. App. 4th

249, 254 (Cal. Ct. App. 1999); *see also Guz*, 24 Cal.4th at 349-

350 (contract does not impose substantive duties beyond those

incorporated into the specific terms of an agreement).

28

**17**

1  Plaintiffs negligence claim is DISMISSED with prejudice.[10]

2  **I. State Law Statutory Claims**

3      Plaintiffs attempt to assert claims for relief "on behalf of
4  the public" in connection with Defendant's alleged violation of
5  California Business and Professions Code section 17200 *et seq.*,
6  Title 10, California Code of Regulations section 2695.7, and
7  California Insurance Code section 780. (Complaint at 18).
8  Defendant correctly points out that California law does not
9  provide a private right of action for violations of California
10 Insurance Code section 780 or the attendant regulations. (Motion
11 to Dismiss at 14-15). "Neither the California Insurance Code nor
12 regulations adopted under its authority provide a private right
13 of action." *Rattan v. United Servs. Auto. Ass'n*, 84 Cal. App.
14 4th 715, 724 (Cal. Ct. App. 2001). In order to state a claim
15 under California Business and Professions Code section 17200 *et*
16 *seq.* based on an insurer's conduct, a plaintiff must allege
17 something more than a mere violation of the California Insurance
18 Code.[11] *See, e.g., Burdick v. Union Sec. Ins. Co.*, 2009 U.S.
19 Dist. LEXIS 121768 (C.D. Cal. Dec. 9, 2009) (collecting cases in
20 which California courts sustained claims against insurance
21 companies pursuant to section 17200). Plaintiffs' conclusory
22 allegations of fraud and misconduct are insufficient to meet

23

24

25 [10] At oral argument, Plaintiffs' counsel conceded that dismissal with prejudice is appropriate for this claim.

26 [11] Defendant cites *Textron Financial Corp. v. National Union Fire Ins. Co.*, 118
27 Cal. App. 4th 1061, 1070-71 (Cal. Ct. App. 2004) in support of its motion to dismiss Plaintiffs' section 17200 claim. Defendant fails to acknowledge that the holding in *Textron* was subsequently disapproved of in several cases. Counsel has
28 a duty to acknowledge adverse authority. *See* Fed. R. Civ. P. 11.

**18**

1  federal pleading requirements.  *Iqbal*, 129 S.Ct. at 1949.

2  Plaintiffs' statutory claims are DISMISSED with prejudice.[12]

3  **J. Reformation Claim**

4      "Reformation may be had for a mutual mistake or for the

5  mistake of one party which the other knew or suspected, but in

6  either situation the purpose of the remedy is to make the written

7  contract truly express the intention of the parties."  *E.g.*

8  *Lemoge Electric v. County of San Mateo*, 46 Cal. 2d 659, (Cal.

9  1956); *Alderson v. Ins. Co. of N. Am.*, 223 Cal. App. 3d 397, 412

10  (Cal. Ct. App. 1990).  An insurance policy may be reformed to

11  limit or exclude coverage if such was the intention of the

12  parties.  *Alderson*, 223 Cal. App. 3d at 412.

13      Initially, Plaintiffs' reformation claim must be dismissed

14  because Plaintiffs conclusory allegations of mutual mistake and

15  "false representations" are not supported by any facts stated in

16  the complaint.  (Complaint at 20).  More importantly, however,

17  Plaintiffs claim for reformation must be dismissed because it is

18  predicated on the assumption that the written agreement between

19  Plaintiffs and Defendant does not require Defendant to reimburse

20  Plaintiffs for costs incurred in defense of an authorized claim.

21  (Complaint at 20).  As discussed above in section IV(A), the

22  plain language of the contract is sufficient to establish

23  Defendant's duty to reimburse Plaintiffs for expenditures

24  consented to by Defendant.  Further, it is undisputed that

25  Defendant did in fact reimburse Plaintiffs some of the funds paid

27

28  [12] At oral argument, Plaintiffs' counsel conceded that dismissal with prejudice is appropriate for this claim.

**19**

in connection with defense of the Garabedian complaint. (Complaint at 5). The instant action is not about whether the contract creates a duty to reimburse Plaintiffs for authorized expenditures; rather, the dispute between Plaintiffs and Defendant concerns *when* this duty arose, and which of Plaintiffs' expenditures were actually authorized. Accordingly, reformation is unnecessary, and Plaintiffs' claim must be DISMISSED with prejudice.[13]

## V. CONCLUSION

For the reasons stated, IT IS ORDERED:

1)  Plaintiffs' breach of contract claim and claim for declaratory relief are DISMISSED, without prejudice;

2)  Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is DISMISSED, with prejudice;

3)  Plaintiffs' claim for tortious breach of the implied covenant of good faith and fair dealing is DISMISSED, without prejudice;

4)  Plaintiffs' claim for waiver/estoppel is DISMISSED, with prejudice;

5)  Plaintiffs' quasi-contract claim is DISMISSED, without prejudice;

6)  Plaintiffs' quantum meruit claim is DISMISSED, without prejudice;

7)  Plaintiffs' claim for negligence is DISMISSED, with prejudice;

[13] At oral argument, Plaintiffs' counsel conceded that dismissal with prejudice is appropriate for this claim.

8)   Plaintiffs' statutory claims are DISMISSED, with prejudice;

10)  Plaintiffs' claim for breach of oral contract is DISMISSED, without prejudice;

11)  Plaintiffs' claim for reformation is DISMISSED, with prejudice; and

12)  Plaintiffs shall lodge a formal order consistent with this decision within five (5) days following electronic service of this decision by the clerk.  Plaintiff shall file an amended complaint within fifteen (15) days of the filing of the order.  Defendant shall file a response within fifteen (15) days of receipt of the amended complaint.

IT IS SO ORDERED.

**Dated:    May 25, 2010**                              **/s/ Oliver W. Wanger**
                                                  UNITED STATES DISTRICT JUDGE